**ROTH CO., Inc., v. ST. CHARLES TIRE CO., Inc.\***

**No. 16374.**

Court of Appeal of Louisiana. Orleans.

Jan. 25, 1937.

\*Rehearing denied 172 So. 838.

Racivitch & Hickerson, of New Orleans, for appellant.

John E. Jackson and Baldwin J. Allen, both of New Orleans, for appellee.

McCALEB, Judge.

This contest involves the interpretation and construction of a lease contract between the plaintiff and the defendant. Plaintiff is the owner of certain commercial property situated in the City of New Orleans, bearing the municipal Nos. 1761-63 St. Charles avenue.

On March 24, 1926, it leased by written contract a portion of this property to Earl E. Schmidt for a term of ten years and six months commencing April 1, 1926, and ending September 30, 1936, for a consideration of the payment of a monthly rental of $250 for the first 60 months and $300 for the remaining period. The property rented adjoins and is located in the rear of a gasoline and service station bearing the same municipal numbers.

At the time the contract was made, plaintiff had been negotiating with the

Standard Oil Company of Louisiana for the purpose of leasing to that company the portion of the premises, which was excluded from the part leased to Schmidt, and in the contract made with Schmidt it is provided that the lessee is aware of and has full detailed knowledge of the fact that the lessor was leasing the adjoining premises to the Standard Oil Company for the purpose of conducting a gasoline, oil, and service station thereon together with other business incidental thereto. On the day following the date of the lease between plaintiff and Schmidt, plaintiff executed a lease with the Standard Oil Company for the adjoining premises, which lease is for the same period of time covered in Schmidt's lease contract, and provides for the rental to the Standard Oil Company of all of the buildings situated on the premises owned by the plaintiff which were excluded from the lease to Schmidt. This lease with the Standard Oil Company grants to the lessee the exclusive right to sell gasoline, greases, and other petroleum products on the premises, and there is no provision contained therein forbidding said lessee from selling automobile tires and accessories or doing vulcanizing work.

The purpose for which the property was rented to Schmidt is stated to be the automobile tire and accessory business, and as soon as Schmidt obtained possession of the demised premises he operated under the name and style of "St. Charles Tire Company." Some years later, during 1932, this business was incorporated and the assets and liabilities of Schmidt were transferred to a corporation named the St. Charles Tire Company, Inc., the defendant in this suit. Shortly after the date on which the corporation became owner of the assets of the business, the original lease entered into between plaintiff and Schmidt was canceled and a new lease was made whereby the corporation was substituted as lessee in the place of Schmidt. The term of this new lease, dated August 4, 1932, is for the unexpired period of time of the original lease, and it contains all of the stipulations and conditions which were agreed to in the first lease. In other words, the new lease is but a substitute for the first lease; and the only difference between them is that, in the later one, the monthly rental to be paid by the lessee is reduced from $300 to $150. During the year 1933 the monthly rental of the premises was again reduced by verbal consent of the plaintiff from $150 to $100.

On or about January 2, 1934, the Standard Oil Company began selling automobile tires from the adjoining leased premises in competition with the defendant. The latter, claiming that plaintiff had breached a provision inserted in its lease, whereby plaintiff agreed not to rent the adjoining premises for the automobile tire and accessory business, notified plaintiff that the acts of the Standard Oil Company were in violation of the contract between the parties. Upon receiving this complaint, plaintiff wrote to the Standard Oil Company requesting that said company desist from engaging in a competitive business with the defendant, but the Standard Oil Company refused to comply with the demand upon the ground that, under the terms and conditions of the lease between the plaintiff and itself, it was not prohibited from selling automobile tires on the premises. (At the time of the execution of the original leases, neither Schmidt nor plaintiff had any idea that the Standard Oil Company would at some future time engage in the selling of automobile tires. This fact is reflected by all of the testimony adduced in the case.)

When the communication from the Standard Oil Company (advising that under its lease it was not forbidden from engaging in the tire business) was received by the plaintiff, it consulted its attorneys regarding the matter. The attorneys rendered an opinion which coincided with the position taken by the Standard Oil Company and also informed the plaintiff that it would be useless to resort to the courts for relief as they felt certain that the contention of the Standard Oil Company would be upheld. Acting upon the foregoing advice, the plaintiff notified the defendant that it could do nothing further in the premises. Thereafter, many conferences were had between the plaintiff and the defendant, with a view of obtaining a solution of the problem. The plaintiff contends that, as a result of these conferences, it finally agreed to allow the defendant to move from the leased premises and cancel the lease, provided that the defendant would pay the rent for the months of December, 1933, and January and February, 1934, which was then due and owing. Defendant, on the other hand, claims that it made no such agreement and asserts that it was compelled to abandon the leased premises because of the competitive operations of the Standard Oil Company, which were destroying its business.

After the defendant left the premises, the plaintiff, through its attorneys, made a number of demands on the defendant for payment of the rent, due for the months of December, 1933, and January and February, 1934, without success. It is significant that when the demands were made, the defendant at no time contended that plaintiff was indebted to it for damages sustained because of the acts of the Standard Oil Company.

Later, however, when the plaintiff filed this suit, seeking recovery of the three months' rent, the defendant sought to avoid liability by contending that the plaintiff had breached the lease contract by permitting the Standard Oil Company to sell automobile tires and accessories upon the adjoining premises.

It further filed a reconventional demand asserting that under the provisions of the lease between the plaintiff and itself, the plaintiff agreed to refrain from renting the adjoining premises on St. Charles avenue to a tenant engaged in the business of selling automobile tires and accessories and doing vulcanizing work; that, notwithstanding this stipulation contained in the lease, the plaintiff permitted the Standard Oil Company, the tenant in the adjoining premises, to sell tires in direct competition with it, and as a result of this unlawful permission, it has suffered a great loss of business and other damages which are itemized in detail amounting to a total of $4,151.18. Judgment was prayed for accordingly.

On these issues the case was heard, and the district court granted judgment to plaintiff on the main demand as prayed for. It also sustained the reconventional demand and gave judgment in favor of the defendant and against the plaintiff in the sum of $3,434.96. The plaintiff has appealed from the judgment against it on the reconventional demand and, inasmuch as the defendant has not appealed from the adverse judgment on the main demand, our only concern is with respect to the correctness of the finding below in defendant's favor on the reconventional demand.

In order to determine whether or not the defendant should be permitted to recover on the reconventional demand, it is necessary to consider the pertinent provisions of the lease which, with the assistance of other documentary evidence adduced, will conclude the controversy. The defendant relies upon a stipulation inserted in the lease contract, which reads:

"Lessor agrees not to rent the adjoining premises on St. Chas. Ave. for Auto Tires, Accessories and Vul. business."

It is apparent that this provision standing alone, and if unexplained by other clauses in the lease, which we shall presently consider, places the onus upon the plaintiff to refrain from renting the adjoining premises owned by it to another tenant without restricting the use of that property against the operation of a business therein competitive with that of the defendant. However, this stipulation must be read in connection with another clause of the lease which, we believe, has the effect of limiting the extent of its application. The specific provision to which we refer reads:

"The lessee is aware of and has full detailed knowledge of the arrangements with, and leasing of the space in front of the above premises together with a portion of the front office to the Standard Oil Company of La. for the purpose of conducting a gasoline, oil and Service Station and other business incidental thereto, and agrees to cooperate with them in a harmonious use of the entire property."

It will be observed from the above-quoted clause that, at the time the premises were rented to Schmidt under the original lease, there was already in existence an agreement on the part of the plaintiff to rent the adjoining premises to the Standard Oil Company for the purpose of conducting a gasoline and service station "and other business incidental thereto," and Schmidt was aware of the proposed lease and covenanted to co-operate with the Standard Oil Company in a harmonious use of the entire property. It is obvious that, under these circumstances, the stipulation, by which plaintiff agreed not to rent the adjoining property for the automobile tire business, was ineffective and inapplicable to the lease previously granted to the Standard Oil Company with Schmidt's knowledge and consent. If we were to sustain the claim of the defendant, we would be compelled to hold that this clause in the lease, whereby defendant admits knowledge of the lease with the Standard Oil Company, was inserted therein without purpose. But we cannot view the case in this light. In construing a contract, all stipulations should be considered

in order that the court may arrive at the true intention of the parties. The plaintiff here agreed with the defendant that it would not rent the adjoining premises to a tenant engaged in a competitive business. But, at the time the plaintiff covenanted this, it also informed the defendant that the premises were already leased to the Standard Oil Company for a service station and other business incidental thereto. The defendant consented to this lease with the Standard Oil Company and thereby recognized that it did not consider that lease to be a violation of the covenant contained in its lease, which was inserted therein for its protection. Because of this, we conclude that the stipulation, upon which defendant grounds its cause of action, was ineffective as to the lease had by plaintiff with the Standard Oil Company and was applicable only to other tenants to whom the adjoining premises might be rented in the future.

We are also of the opinion that whatever right Schmidt may have had under the original lease, by virtue of the clause in the contract relied on by defendant, was waived by him with respect to the occupancy and use of the adjoining premises by the Standard Oil Company. It appears that on the same day, viz., March 25, 1926, when the lease between the Standard Oil Company and the plaintiff was executed, Schmidt advised the plaintiff by letter that:

"I have carefully read the contract of lease between you and the Standard Oil Company of La. and wish to advise that the stipulations contained therein are entirely satisfactory to our company."

From the foregoing, it will be seen that, at the time the lease contract between Schmidt and the plaintiff was executed, Schmidt had full knowledge of the negotiations between the plaintiff and the Standard Oil Company and was not only provided with a copy of the proposed lease with the Standard Oil Company but also approved of its terms and conditions. It is, to say the least, inconsistent for the defendant to assent to the terms of that lease and now attempt to hold the plaintiff in damages because, as it now claims, there was no provision inserted therein forbidding the Standard Oil Company from selling tires and accessories.

The stipulations respecting the use of the adjoining premises by the Standard Oil Company, as well as the prohibition against the lessor leasing that property for the automobile tire and accessory business, are also contained in the second lease entered into between the plaintiff and defendant corporations. It follows, therefore, that at the time the defendant became lessee under the lease made on August 4, 1932, it was aware and had full detailed knowledge of the lease by the plaintiff to the Standard Oil Company, and hence the covenant, that those premises would not be rented for the automobile tire and accessory business, could only have application to a tenant other than the Standard Oil Company. In other words, the new company stood in the shoes of Schmidt and it could not obtain any greater rights than he had. In fact, he (Schmidt) was the president and controlling factor of the defendant corporation.

For the foregoing reasons, we find that the district judge erred in his construction and interpretation of the lease contract between the parties and should have held that the provision in the lease, relating to the restriction placed upon the lessor against renting the adjoining premises for the automobile tire and accessory business, was not violated by the plaintiff, inasmuch as this prohibition was without application to the lease between the plaintiff and the Standard Oil Company, and could only have effect as to contracts made with other tenants who might occupy those premises in the future. The district court should have further held that, at all events, the approval by the defendant of the lease between the plaintiff and the Standard Oil Company constituted a waiver by it of the provision contained in the lease contract on which is bases its cause of action.

In view of our finding, it is unnecessary to consider the other points raised by the plaintiff-appellant.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is hereby annulled, avoided, and reversed, and it is now ordered that the reconventional demand of the St. Charles Tire Company, Inc., be and the same is hereby dismissed, at its cost.

Reversed.

WESTERFIELD, J., dissents.